**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| TYIOUN KEYES, *individually and* ) | |
| *as parent and next friend of* ) | |
| AUTUMN KEYES, TAYLOR KEYES, ) | |
| BRANDON KEYES, and ) | |
| WINTER KEYES, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 21-cv-10577-AK |
| ) | |
| ) | |
| v. ) | |
| ) | |
| VIP, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

**A. KELLEY, D.J.**

Plaintiff Tyioun Keyes ("Keyes") brings this suit individually and as parent and next friend of Autumn Keyes, Taylor Keyes, Brandon Keyes, and Winter Keyes (the "Keyes children") for loss of parental consortium, among other claims, against Defendant VIP, Inc. ("VIP"), in connection with an automobile accident that occurred in New Hampshire. The plaintiffs have moved to apply Massachusetts law to their loss-of-consortium claim. [Dkt. 78]. For the following reasons, that motion is **GRANTED**.

**I.     Background**

This case arises from a New Hampshire car accident. Keyes, a citizen of Massachusetts, alleges he sustained injuries due to the negligent installation of car tires by VIP, a Maine-based company. [See generally Dkt. 1]. VIP has approximately sixty stores across Maine, New Hampshire, Vermont, and Massachusetts. Keyes claims that on or about July 14, 2018, VIP's

Merrimack, New Hampshire, location installed four new tires on Keyes's car.  That same day,

after Keyes picked up his car from VIP, the left rear tire came loose and Keyes lost control of the

vehicle in Nashua, New Hampshire.  Following the accident, the car was towed to a VIP store in

Billerica, Massachusetts.  Keyes alleges he sustained several injuries as a result of the accident,

including "paralysis of his legs, incontinence, autonomic dysreflexia, bloody mucus, neck and rib

discomfort, a protrusion at T7-8, and severe emotional distress."  [Dkt. 79 at 3].  Keyes also

maintains that, because of these injuries, the Keyes children "have suffered the loss of the full

enjoyment of the parent-child relationship with their father (loss of consortium), including, but

not limited to, society, affection, support, assistance, comfort, care, and companionship."  [Id.].

While the parties do not dispute that New Hampshire law governs Keyes's negligence and

breach of warranty claims, Keyes contends that Massachusetts law governs the loss-of-

consortium claim.  [See Dkts. 79, 80].

## II.     Legal Standard

District courts presiding over cases based upon diversity of citizenship jurisdiction must

apply the substantive laws of the state in which they sit.  See Erie R.R. Co. v. Tompkins, 304

U.S. 64 (1938).  Pursuant to Erie, choice-of-law questions are substantive issues that require the

application of the laws of the state in which the district court sits.  See Klaxon Co. v. Stentor

Elec. Mfg. Co., 313 U.S. 487 (1941).  Therefore, this Court must apply Massachusetts's choice-

of-law rules.

## III.    Discussion

The plaintiffs seek to apply Massachusetts law to the loss-of-consortium claim, while the

defendant seeks to apply New Hampshire law.  The first step in the choice-of-law analysis is "to

ascertain whether there is a conflict among the laws of the various States involved."  Cohen v.

McDonnell Douglas Corp., 450 N.E.2d 581, 584 n.7 (Mass. 1983).  Here, the conflict is clear.
Massachusetts recognizes a cause of action for loss of parental consortium when the parent's
injury is a result of a third party's negligence.  See Ferriter v. Daniel O'Connell's Sons, Inc., 413
N.E.2d 690, 695 (Mass. 1980).  New Hampshire does not recognize any cause of action for loss
of parental consortium.  See Harrington v. Brooks Drugs, Inc., 808 A.2d 532, 532 (N.H. 2002).

    To resolve this conflict of law, Massachusetts uses a "functional approach" that
"responds to the interests of the parties, the States involved, and the interstate system as a
whole."  Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985).  This
approach follows the Restatement (Second) Conflict of Laws (1971) as its touchstone.  See
Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d 832, 834 (Mass. 1994).  The Restatement
establishes a rebuttable presumption that the "local law of the state where the injury occurred
determines the rights and liabilities of the parties, unless, with respect to the particular issue,
some other state has a more significant relationship under the principles stated in § 6 to the
occurrence and the parties."  See Restatement (Second) of Conflict of Laws § 146 (1971).  The
state where the injury occurred, also referred to as the "place of the wrong," is "the place where
the last event necessary to make an actor liable for an alleged tort takes place."  Cohen, 450
N.E.2d at 585 (quoting Orr v. Sasseman, 239 F.2d 182, 186 (5th Cir. 1956)).  Here, the tire
installation and accident—both of which occurred in New Hampshire—were the last events
creating potential liability for VIP for negligence and loss-of-consortium claims.  Therefore, the
presumption is that New Hampshire law applies.

    The Restatement also instructs courts to consider the nature and type of contacts when
evaluating whether the place of the wrong governs a tort claim.  These contacts include "(a) the
place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c)

the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement § 145. The contacts here are split between New Hampshire and Massachusetts. First, while Keyes's alleged injury occurred in Nashua, New Hampshire, the damage from the loss of parental consortium is felt in Massachusetts because the Keyes children are residents of Massachusetts. Second, the place where the conduct causing the injury occurred is New Hampshire because the allegedly negligent installation of the tires occurred at VIP's Manchester, New Hampshire location. Third, while Keyes is a resident of Massachusetts, VIP is a Maine-based company with approximately sixty stores across Maine, New Hampshire, Vermont, and Massachusetts. Fourth, although Keyes's car was towed to Massachusetts after the accident, Keyes's initial relationship with VIP was in New Hampshire, where the tires were installed. Without more, these contacts are not sufficient to overcome the presumptive application of New Hampshire law.

The Court must next consider whether Massachusetts "has a more significant relationship . . . to the occurrence and the parties." See Restatement § 146; see also Cosme, 632 N.E.2d at 835 (weighing Restatement factors). To do so, the Court looks to the factors enumerated in § 6 of the Restatement, which include the following: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restatement § 6. Although the "Massachusetts Supreme Judicial Court (SJC) has not directly confronted a choice of law issue in the context of a loss of

consortium claim," the District of Massachusetts has applied Massachusetts law to loss-of-consortium claims arising from personal injuries that occurred outside Massachusetts after considering the factors enumerated in § 6 of the Restatement.  Messana v. Acres of Wildlife Campground, Inc., No. CV 04-11913-LTS, 2006 WL 8458354, at *2 (D. Mass. Apr. 25, 2006) (citing Cohen, 450 N.E.2d at 586 n.8).

For example, in Messana v. Acres of Wildlife Campground, Inc., the court applied Massachusetts law to a loss-of-consortium claim by the Massachusetts family of a Massachusetts woman hit by a falling tree at a Maine campground.  2006 WL 8458354, at *1.  The court highlighted that the "children returned to Massachusetts on the same day, immediately following the accident, and consequently they *suffered the loss of consortium entirely while in Massachusetts*." Id. at *3 (emphasis added).  As a result, the court found that the "nature of a loss of consortium claim leads to the conclusion that Massachusetts clearly has a more significant relationship to the cause of action."  Id.  Similarly, in Sullivan v. Bankhead Enterprises, Inc., the court applied Massachusetts law to a loss-of-consortium claim by the Massachusetts wife of a Massachusetts trucker injured while in Maine.  No. CIV.A. 84-1186-N, 1986 WL 13947, at *7 (D. Mass. Dec. 11, 1986).  The court found that "Massachusetts is the place in which [the husband's] continued treatment will occur and where [the wife] *continues to suffer the loss of consortium*." Id. (emphasis added).

The Restatement factors favor application of Massachusetts law to the loss-of-consortium claim here.  A couple factors demonstrate that Massachusetts has more substantial contacts and interests in Keyes and the Keyes children's loss-of-consortium claim than New Hampshire does.  First, Keyes and the Keyes children reside in Massachusetts, and the relevant cause of action is the loss of parental consortium.  Since the Keyes children reside in Massachusetts, that loss will

be felt most strongly in Massachusetts.[1]  Second, Keyes's car was towed to a VIP store in

Massachusetts and VIP has availed itself of Massachusetts laws by opening stores in

Massachusetts.  It cannot be said that VIP otherwise would not be subject to Massachusetts law.

Therefore, although the accident occurred in New Hampshire, Massachusetts has a stronger

interest in applying its law.  See Pevoski v. Pevoski, 358 N.E.2d 416, 417 (Mass. 1976) ("[O]n

the particular facts of a case another jurisdiction may sometimes be more concerned and more

involved with certain issues than the State in which the conduct occurred.").

Policy factors also favor application of Massachusetts law because Massachusetts's

interests are more deeply affected than New Hampshire's.  See Restatement, § 6 cmt. f. ("In

general, it is fitting that the state whose interests are most deeply affected should have its local

law applied.").  The interest of Massachusetts is "[p]rotecting a child's need for parental love and

nurture."  Ferriter v. Daniel O'Connell's Sons, Inc., 413 N.E.2d 690, 695 (Mass. 1980).  The

interest of New Hampshire is preventing recovery for an "intangible, nonpecuniary loss which

can never properly be compensated by money damages."  Siciliano v. Capitol City Shows, Inc.,

475 A.2d 19, 22 (N.H. 1984).  Both policies have merit.  However, Massachusetts's interest in

applying its law is more deeply felt because the injury for the loss of consortium will occur in

Massachusetts.

The basic policies underlying tort law also favor application of Massachusetts law.

Several policies, including "the deterrence of tortious conduct and the provision of compensation

for the injured victim," inform tort law.  Restatement, § 145 cmt. b.  Here, application of

---

[1] Although the defendant contends that Massachusetts law should not apply because the
plaintiffs' loss-of-consortium claim is meritless, whether the plaintiffs' claim will succeed is
irrelevant to which state's law should apply, regardless of the strength of the defendant's
argument.  The merit of the plaintiffs' loss-of-consortium claim is an issue ultimately left for
trial.

Massachusetts law furthers the goal of compensating the injured victims.  See Sullivan, 1986 WL 13947, at *7 ("Massachusetts also has a 'well-established body of precedent favoring third party actions for loss of services or consortium.'" (quoting Ferriter, 413 N.E.2d at 701 n.25)).  Indeed, since loss of parental consortium is not a cognizable claim under New Hampshire law, the children would be barred from receiving compensation if Massachusetts law did not apply.

Taken together, these factors demonstrate that Massachusetts's interests overcome the presumptive application of New Hampshire law to the plaintiffs' loss-of-consortium claim.  See Stathis v. Nat'l Car Rental Sys., Inc., 109 F. Supp. 2d 55, 56 (D. Mass. 2000) ("[D]ifferent law could apply to different aspects of a case, depending on which state has the dominant interest in its resolution").

## IV.   Conclusion

For the foregoing reasons, the plaintiff's motion to apply Massachusetts law to the claim for loss of parental consortium [Dkt. 78] is **GRANTED**.

**SO ORDERED.**

Dated: August 4, 2022                                                /s/ Angel Kelley
                                                                     Hon. Angel Kelley
                                                                     United States District Judge